IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 08 C 2410 |
| | ) | |
| SENTINEL MANAGEMENT GROUP, INC., | ) | Hon. Charles P. Kocoras |
| ERIC A. BLOOM, and CHARLES K. MOSLEY, | ) | |
| | ) | |
| | ) | Jury Demanded |
| Defendants. | ) | |

## ANSWER TO COMPLAINT BY ERIC BLOOM

### I. SUMMARY

1.      This action involves fraud and misuse of futures commission merchant ("FCM") commodity customer funds by the Defendants, Sentinel Management Group, Inc. ("Sentinel"), its president, Eric A. Bloom ("Bloom"), and its senior vice president, Charles K. Mosley ("Mosley"), from at least May 21, 2007 through August 17, 2007 ("the relevant time"). Sentinel is registered as a FCM with plaintiff Commodity Futures Trading Commission ("Commission" or "CFTC") and is registered as an investment adviser with the Securities and Exchange Commission ("SEC"). Sentinel provided investment advisory and money management services.

**ANSWER:**      The first sentence of this paragraph alleges legal conclusions to which no response is required. To the extent a response is required as to the first sentence, and in response to the remaining allegations of this paragraph, on the advice of counsel, Defendant respectfully declines to answer the allegation(s) of this paragraph based on his privilege under the Fifth

Amendment to the United States Constitution.

2.    During at least the relevant time, Sentinel improperly commingled customer segregated assets with its assets and the assets of others and misappropriated such customers' assets by using them to secure, extend or pay Sentinel's debt.

> **ANSWER:**    On the advice of counsel, Defendant respectfully declines to answer the allegation(s) of this paragraph based on his privilege under the Fifth Amendment to the United States Constitution.

3.    Sentinel has engaged, is engaging, or is about to engage in acts or practices that violate the anti-fraud and segregation of customer assets sections of the Commodity Exchange Act, as amended ("Act"), 7 U.S.C. §§ 1 *et seq.* (2002), and Commission Regulations thereunder, 17 C.F.R. §§ 1.1 *et seq.* (2007).  Mosley aided and abetted Sentinel's violations and is liable for those violations pursuant to Section 13(a) of the Act, 7 U.S.C. § 13c(a).  Bloom is a controlling person of Sentinel and is liable for Sentinel's violations pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2002).

> **ANSWER:**    This paragraph alleges legal conclusions to which no response is required. To the extent a response is required, on the advice of counsel, Defendant respectfully declines to answer the allegation(s) of this paragraph based on his privilege under the Fifth Amendment to the United States Constitution.

4.    Accordingly, pursuant to Section 6c(a) of the Act, 7 U.S.C. § 13a-1 (2002), the Commission brings this action to enjoin Defendants' unlawful acts and practices, and compel Defendants' compliance with the provisions of the Act and regulations thereunder.  In addition, the CFTC seeks civil monetary penalties against Bloom and Mosley and such other equitable relief as

to all defendants as this Court may deem necessary or appropriate.

> **ANSWER:** On the advice of counsel, Defendant respectfully declines to answer the allegation(s) of this paragraph based on his privilege under the Fifth Amendment to the United States Constitution.

## II.  JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2002), which provides that whenever it shall appear to the Commission that any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order promulgated thereunder, the Commission may bring an action in the proper District Court of the United States against such person to enjoin such practice, or to enforce compliance with the Act, or any rule, regulation or order thereunder.

> **ANSWER:** This paragraph alleges legal conclusions to which no response is required. To the extent a response is required, on the advice of counsel, Defendant respectfully declines to answer the allegation(s) of this paragraph based on his privilege under the Fifth Amendment to the United States Constitution.

6.      Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2002), because Sentinel's principal place of business is in this District and acts and practices in violation of the Act and Commission Regulations have occurred within this District.

> **ANSWER:** This paragraph alleges legal conclusions to which no response is required. To the extent a response is required, on the advice of counsel, Defendant respectfully declines to answer the allegation(s) of this paragraph based on his privilege under the Fifth Amendment to the United States Constitution.

### III.  THE PARTIES

7.    Plaintiff **Commodity Futures Trading Commission** is an independent federal regulatory agency that is charged with administering and enforcing the Act, 7 U.S.C. §§ 1 *et seq*. (2002), and the regulations promulgated thereunder, 17 C.F.R. §§ 1.1 *et seq*. (2007).

> **ANSWER:**    Defendant is without information sufficient to form a belief as to the allegations of this paragraph, the effect of which is to deny the same.

8.    Defendant **Sentinel Management Group, Inc.** is an Illinois corporation with its principal place of business located in Northbrook, Illinois. Sentinel provides investment advisory and money management services to various institutional, corporate and individual customers, including FCMs. Sentinel has been registered with the Commission as a FCM since June 1980 and also has been registered with the SEC as an investment adviser since December 1980. Sentinel has also been a member of the National Futures Association ("NFA"), a self-regulatory organization for the U.S. futures industry, since July 1982. Sentinel is currently the subject of a bankruptcy proceeding in the bankruptcy court for this district. *See In re: Sentinel Management Group, Inc.,* (No. 07-14987, Bankr. N.D. Ill.).

> **ANSWER:**    On the advice of counsel, Defendant respectfully declines to answer the allegation(s) of this paragraph based on his privilege under the Fifth Amendment to the United States Constitution.

9.    Defendant **Eric A. Bloom** resides in Chicago, Illinois. Bloom was a principal, director, president and chief executive officer of Sentinel during the relevant time. Bloom has never been registered with the CFTC in any capacity.

> **ANSWER:**    On the advice of counsel, Defendant respectfully declines to answer the

-4-

allegation(s) of this paragraph based on his privilege under the Fifth Amendment to the United States Constitution.

10.    Defendant **Charles K. Mosley** resides in Vernon Hills, Illinois. Mosley was a director, senior vice-president and a principal of Sentinel during the relevant time. Mosley ceased employment with Sentinel, and his status as a principal was withdrawn on August 15, 2007. Mosley has not been registered with the CFTC in any capacity since April 1989, when he was registered as an associated person of another registered FCM.

> **ANSWER:**    On the advice of counsel, Defendant respectfully declines to answer the allegation(s) of this paragraph based on his privilege under the Fifth Amendment to the United States Constitution.

## IV.  FACTS

### A.    Statutory and Regulatory Background

11.    A FCM is defined in Section 1a(20) of the Act, 7 U.S.C. § 1a(20), and Commission Regulation 1.3(p), 17 C.F.R. § 1.3(p), with certain qualifications, as an individual, association, partnership, corporation, or trust that is engaged in soliciting or in accepting orders for the purchase or sale of any commodity for future delivery on or subject to the rules of any contract market or derivatives transaction execution facility; and in or in connection with such solicitation or acceptance of orders, accepts any money, securities, or property (or extends credit in lieu thereof) to margin, guarantee, or secure any trades or contracts that result or may result therefrom.

> **ANSWER:**    This paragraph alleges legal conclusions to which no response is required. To the extent a response is required, on the advice of counsel, Defendant

respectfully declines to answer the allegation(s) of this paragraph based on

his privilege under the Fifth Amendment to the United States Constitution.

12.     The NFA is a not-for-profit membership corporation and is a self-regulatory

organization that is registered with the Commission as a futures association under Section 17 of

the Act, 7 U.S.C. § 21.  The NFA conducts audits and investigations of NFA member firms,

including registered FCMs, to monitor them for compliance with NFA rules, some of which

incorporate by reference Commission Regulations.

> **ANSWER:**     The first sentence of this paragraph alleges legal conclusions to which no
>
> response is required.  To the extent a response is required as to the first
>
> sentence, and in response to the remaining allegations of this paragraph, on
>
> the advice of counsel, Defendant respectfully declines to answer the
>
> allegation(s) of this paragraph based on his privilege under the Fifth
>
> Amendment to the United States Constitution.

**B.     Background**

13.     Sentinel managed investments of short-term cash for various customers, including

hedge funds, pension funds, other FCMs, customers of other FCMs, individuals and others. As of

August 13, 2007, Sentinel claimed to have $1.2 billion of customer assets under management.

> **ANSWER:**     On the advice of counsel, Defendant respectfully declines to answer the
>
> allegation(s) of this paragraph based on his privilege under the Fifth
>
> Amendment to the United States Constitution.

14.     Sentinel offered customers the opportunity to participate in a variety of investment

programs, each of which had its own investment policy depending on the needs and preferences of

its customers. Sentinel's general practice was to pool a customer's assets with those of other customers participating in the same investment program in custodial accounts held both at the Bank of New York ("BONY") and J.P. Morgan Chase. These investment programs and their related accounts were referred to within Sentinel as "Seg 1", "Seg 2" and "Seg 3", depending on the type of customer it serviced.

> **ANSWER:** On the advice of counsel, Defendant respectfully declines to answer the allegation(s) of this paragraph based on his privilege under the Fifth Amendment to the United States Constitution.

15.    The Seg 1 program invested and kept segregated the segregated assets of domestic customers of other FCMs registered with the Commission, whose deposits were held for the purchase of commodity futures contracts or options on commodity futures contracts. The investments for the customers of the FCMs were subject to the rules of the Commission, in particular to the investment standards embodied in Commission Regulation 1.25, 17 C.F.R. § 1.25 (2007). As relevant here, those standards include restrictions on the investment of the segregated customer funds of the other FCMs consistent with the objectives of preserving principal and maintaining liquidity.

> **ANSWER:** The second and third sentences of this paragraph alleges legal conclusions to which no response is required. To the extent a response is required as to the second and third sentences, and in response to the remaining allegations of this paragraph, on the advice of counsel, Defendant respectfully declines to answer the allegation(s) of this paragraph based on his privilege under the Fifth Amendment to the United States Constitution.

16.    Sentinel expressly acknowledged this duty to adhere to the investment standards of

Regulation 1.25 when, in 1981, it also requested the Commission's Division of Trading and Markets to take a "no-action" position regarding Sentinel's maintenance of adjusted net capital. As set forth in Commission Regulation 1.17, 17 C.F.R. § 1.17, a FCM's adjusted net capital is calculated by deducting total liabilities from total current assets to arrive at net capital, from which certain charges are deducted as a cushion against potential decreases in market value to arrive at adjusted net capital. Based partially on Sentinel's representation that it was registered as a FCM solely so that it may hold customers' funds deposited with it by other FCMs for the exclusive purpose of investing such funds in Regulation 1.25 approved obligations for the benefit of such other FCMs, and its representation that customers' funds are segregated, the Commission issued a "no-action" letter to Sentinel dated May 7, 1981 that, allowed Sentinel to operate under certain net capital provisions and other restrictions.

> **ANSWER:** The first sentence of this paragraph alleges legal conclusions to which no response is required. To the extent a response is required as to the first sentence, and in response to the remaining allegations of this paragraph, on the advice of counsel, Defendant respectfully declines to answer the allegation(s) of this paragraph based on his privilege under the Fifth Amendment to the United States Constitution.

17. As a registered FCM, Sentinel was required under the Act and Commission Regulations to adhere to the standards of segregation and handling of customer funds as outlined in Sections 4d(a)(2) and 4d(b) of the Act, 7 U.S.C. §§ 6d(a)(2) and 6d(b) (2002), and Commission Regulations 1.20, 1.22 and 1.23, 17 C.F.R. §§ 1.20, 1.22 and 1.23 (2007).

> **ANSWER:** This paragraph alleges legal conclusions to which no response is required.

To the extent a response is required, on the advice of counsel, Defendant respectfully declines to answer the allegation(s) of this paragraph based on his privilege under the Fifth Amendment to the United States Constitution.

18.    The Seg 2 program invested the assets of customers of FCMs that traded foreign futures and options.

**ANSWER:**    On the advice of counsel, Defendant respectfully declines to answer the allegation(s) of this paragraph based on his privilege under the Fifth Amendment to the United States Constitution.

19.    The Seg 3 program invested the assets of all other types of customers, including hedge funds, trust accounts, pension funds, individuals and others.

**ANSWER:**    On the advice of counsel, Defendant respectfully declines to answer the allegation(s) of this paragraph based on his privilege under the Fifth Amendment to the United States Constitution.

20.    From at least July 2005 to August 17, 2007, in its standard investment advisory agreement ("Agreement") with all of its customers, Sentinel represented that the customers in each portfolio owned a pro rata interest in their particular investment portfolio. The Agreement also provided discretionary authority to Sentinel to buy and sell securities without requesting authority from customers before executing the trades.  The Agreement often had an Addendum specifying the investment policy that was to be used to invest the customer's funds.

**ANSWER:**    On the advice of counsel, Defendant respectfully declines to answer the allegation(s) of this paragraph based on his privilege under the Fifth Amendment to the United States Constitution.

**C.    Misuse and Misappropriation of Customer Segregated Funds For Sentinel's Benefit**

21.    During the relevant time, Sentinel maintained a line of credit with BONY (the "BONY loan"). The credit extended under this line of credit varied during the time period, reaching as high as $500 million in June 2007. One of the purposes of the BONY loan was to allow Sentinel to draw upon the loan to immediately honor Seg 1 FCM redemption requests.

> **ANSWER:**    On the advice of counsel, Defendant respectfully declines to answer the allegation(s) of this paragraph based on his privilege under the Fifth Amendment to the United States Constitution.

22.    Associated with the BONY loan was a house account in Sentinel's name at BONY. The house account was not segregated and any assets placed in that account were pledged as collateral for the BONY loan.

> **ANSWER:**    On the advice of counsel, Defendant respectfully declines to answer the allegation(s) of this paragraph based on his privilege under the Fifth Amendment to the United States Constitution.

23.    Sentinel used the BONY loan for various purposes. Among other things, if sufficient Seg 1 cash was not available in the Seg 1 account to honor redemption requests, then Sentinel drew upon the BONY loan to honor the Seg 1 FCMs' redemption requests. On those occasions when house account funds were required to meet FCM redemption requests, a corresponding amount of Seg 1 segregated securities was to be transferred to the house account, held until eventually liquidated, and the proceeds used to pay down the BONY loan.

> **ANSWER:**    On the advice of counsel, Defendant respectfully declines to answer the

allegation(s) of this paragraph based on his privilege under the Fifth Amendment to the United States Constitution.

24.     Sentinel also used the BONY loan to obtain additional leveraged financing for its security purchases.

**ANSWER:**     On the advice of counsel, Defendant respectfully declines to answer the allegation(s) of this paragraph based on his privilege under the Fifth Amendment to the United States Constitution.

25.     Sentinel was required to hold in segregated accounts sufficient funds and securities to meet its obligations to customers at all times.  During the relevant time, Sentinel routinely used its Seg 1 FCM segregated customer funds to secure its loan with the BONY by improperly transferring and holding Seg 1 securities in the nonsegregated house account.

**ANSWER:**     This paragraph alleges legal conclusions to which no response is required. To the extent a response is required, on the advice of counsel, Defendant respectfully declines to answer the allegation(s) of this paragraph based on his privilege under the Fifth Amendment to the United States Constitution.

26.     Sentinel frequently held customer securities in the nonsegregated house account in excess of the amount required to honor the redemption requests of Seg 1 FCMs for that day. Sentinel's holding of Seg 1 securities in the nonsegregated house account in excess of the amount previously used to honor the redemption requests of Seg 1 FCMs, absent sufficient excess segregated funds in the Seg 1 account meant that Sentinel thereby pledged or made available those Seg 1 segregated securities as collateral for the BONY loan. For example:

a)     On May 21, 2007, Sentinel held at least $86 million of Seg 1 customer

-11-

securities in Sentinel's "house" account at BONY. On that date, Seg 1 FCM redemptions were approximately $14 million, however, FCM deposits in Seg 1 were in excess of $20 million. Hence, Sentinel's holding of $86 million of Seg 1 securities in the house account on that date was not necessary to honor Seg 1 redemptions.

b)  On June 29, 2007, Sentinel held at least $410 million of Seg 1 customer securities in Sentinel's "house" account at BONY. On that date, Seg 1 FCM redemptions were approximately $27 million, however, FCM deposits to Seg 1 were in excess of $28 million. Hence, Sentinel's holding of $410 million of Seg 1 securities in the house account was not necessary to honor Seg 1 redemptions.

c)  On July 18, 2007, Sentinel held at least $449 million of Seg 1 customer securities in Sentinel's "house" account at BONY. On that date, Seg 1 FCM redemptions were approximately $14 million and FCM deposits to Seg 1 were $9 million. Hence, Sentinel had approximately $444 million of Seg 1 securities in the house account in excess of the amount required to honor the redemptions for that day.

d)  On August 7, 2007, Sentinel held at least $137 million of Seg 1 customer securities in Sentinel's "house" account at BONY. On that date, Seg 1 FCM redemptions were approximately $18 million, however, FCM deposits to Seg 1 were in excess of $29 million. Hence, Sentinel's holding of approximately Seg 1 $137 million securities in the house account was not necessary to honor

Seg 1 redemptions.

    e)     On August 13, 2007, Sentinel held at least $148 million of Seg 1 customer securities in Sentinel's "house" account at BONY. On that date, Seg 1 FCM redemptions were approximately $70 million, however, FCM deposits to Seg 1 were $68 million. Hence, Sentinel had approximately $146 million of Seg 1 securities in the house account in excess of the amount required to honor the redemptions for that day.

**ANSWER:**    On the advice of counsel, Defendant respectfully declines to answer the allegation(s) of this paragraph based on his privilege under the Fifth Amendment to the United States Constitution.

27.    Sentinel's use of segregated securities belonging to the customers of the Seg 1 FCMs as collateral in order to obtain or maintain a line of credit with BONY constituted a misappropriation of Seg 1 customer property for Sentinel's own benefit.  Sentinel was not authorized by its Seg 1 customers or the FCMs to use or encumber the securities in this manner.

**ANSWER:**    The first sentence of this paragraph alleges legal conclusions to which no response is required. To the extent a response is required as to the first sentence, and in response to the remaining allegations of this paragraph, on the advice of counsel, Defendant respectfully declines to answer the allegation(s) of this paragraph based on his privilege under the Fifth Amendment to the United States Constitution.

28.    Mosley customarily was in charge of Sentinel's securities trading for the Seg 1, Seg 2 and Seg 3 portfolios.  During at least the relevant time, Mosley drew upon the BONY loan to fund

various securities transactions and received daily reports regarding the amount and status of the BONY loan. To collateralize the BONY loan, Mosley willfully caused excess Seg 1 securities to be moved from Sentinel's Seg 1 segregated account to Sentinel's house account.

> **ANSWER:**    On the advice of counsel, Defendant respectfully declines to answer the allegation(s) of this paragraph based on his privilege under the Fifth Amendment to the United States Constitution.

29.    Bloom, president and chief executive officer of Sentinel, was informed on a daily basis of Mosley's trading, and reviewed the daily statements regarding the liability of the BONY loan and transfer of excess Seg 1 assets to the house account. Consequently, he knew that Seg 1 assets were being used improperly to secure Sentinel's loan with BONY. He also had control over the persons that determined what assets were pledged to secure that loan, including, but not limited to, Mosley.

> **ANSWER:**    On the advice of counsel, Defendant respectfully declines to answer the allegation(s) of this paragraph based on his privilege under the Fifth Amendment to the United States Constitution.

### D.    Filing of False Reports with the Commission

30.    Section 4g(a) of the Act, 7 U.S.C. § 6g(a), requires FCMs to make such reports as are required by the Commission regarding its transactions and positions, and the transactions and positions of customers. Pursuant to Commission Regulation 1.10(b), 17 C.F.R. § 1.10(b), FCMs are required to prepare and file periodic statements of financial condition on Form 1-FRs with the Commission. These reports are required to contain, *inter alia*, a statement of financial condition as of the date the report was made and a statement of computation of the firm's minimum capital

requirements, including its adjusted net capital and its excess adjusted net capital. Commission Regulation 1.10(d)(1), 17 C.F.R. § 1.10(d)(1), requires that Form 1-FRs be prepared in accordance with generally accepted accounting principles ("GAAP"), except where the regulations specify otherwise, applied on a basis consistent with that of the FCM's preceding financial report, and include all disclosures necessary to make the report a clear and complete statement of the FCM's financial position under the Commission's rules.

> **ANSWER:** This paragraph alleges legal conclusions to which no response is required. To the extent a response is required, on the advice of counsel, Defendant respectfully declines to answer the allegation(s) of this paragraph based on his privilege under the Fifth Amendment to the United States Constitution.

31.    Pursuant to its letter agreements with the Commission and Commission Regulation 1.10, 17 C.F.R. § 1.10, Sentinel was required to file Form 1-FR financial reports with the Commission on a monthly basis. The Form 1-FR reports expressly required Sentinel to disclose securities purchased under resale agreements – *i.e.*, repos – and liabilities, including amounts payable to banks.

> **ANSWER:** This paragraph alleges legal conclusions to which no response is required. To the extent a response is required, on the advice of counsel, Defendant respectfully declines to answer the allegation(s) of this paragraph based on his privilege under the Fifth Amendment to the United States Constitution.

32.    During the period of at least September 2005 through July 2007, Sentinel filed with the Commission at least 23 Form 1-FRs that falsely reported that Sentinel owned no securities purchased under resale agreements and had no amounts payable, including no amounts payable to

BONY, despite the existence of the BONY loan.

> **ANSWER:**    On the advice of counsel, Defendant respectfully declines to answer the allegation(s) of this paragraph based on his privilege under the Fifth Amendment to the United States Constitution.

### E.    Bankruptcy of Sentinel

33.    On August 13, 2007, Sentinel issued a letter announcing that it was requesting authority from the Commission to suspend customer requests for redemptions ("August 13 letter"). In that letter, Sentinel stated that the reason for the redemption freeze was its fear that redemption requests could force Sentinel to sell securities at deep discounts to their fair value due to the downturn in the credit markets, and this could cause losses to customers.

> **ANSWER:**    On the advice of counsel, Defendant respectfully declines to answer the allegation(s) of this paragraph based on his privilege under the Fifth Amendment to the United States Constitution.

34.    In fact, Sentinel never requested such authority from the Commission and the Commission did not grant Sentinel any such authority. Nevertheless, Sentinel did not allow redemptions of investments.

> **ANSWER:**    On the advice of counsel, Defendant respectfully declines to answer the allegation(s) of this paragraph based on his privilege under the Fifth Amendment to the United States Constitution.

35.    On August 17, 2007, Sentinel filed a voluntary petition for protection under Chapter 11 of the Bankruptcy Code, in the U.S. Bankruptcy Court for the Northern District of Illinois.

> **ANSWER:**    On the advice of counsel, Defendant respectfully declines to answer the

allegation(s) of this paragraph based on his privilege under the Fifth Amendment to the United States Constitution.

36.     According to Sentinel's records, on August 15, 2007, Sentinel owed its Seg 1 customers approximately $561 million. Since that time, Sentinel has paid its Seg 1 customers approximately $431 million leaving a balance due to its Seg 1 customers of approximately $130 million.

**ANSWER:**     On the advice of counsel, Defendant respectfully declines to answer the allegation(s) of this paragraph based on his privilege under the Fifth Amendment to the United States Constitution.

## V.  VIOLATIONS OF THE ACT AND COMMISSION'S REGULATIONS
## COUNT ONE VIOLATIONS OF SECTION 4b(a)(2)(I) OF THE ACT:
## FRAUD BY MISAPPROPRIATION

37.     The allegations set forth in paragraphs 1 through 36 are re-alleged and incorporated herein.

**ANSWER:**     Defendant re-alleges his answers to each of paragraphs 1 through 36, as set forth above.

38.     Section 4b(a)(2)(I) of the Act, 7 U.S.C. § 6b(a)(2)(I), makes it unlawful in or in connection with orders to make, or the making of, contracts of sale of commodities, for future delivery, made, or to be made, for or on behalf of such other persons where such contracts for future delivery were or may have been used for (a) hedging any transaction in interstate commerce in such commodity, or the products or byproducts thereof, or (b) determining the price basis of any transaction in interstate commerce in such commodity, or (c) delivering any such commodity sold, shipped, or received in interstate commerce for the fulfillment thereof to cheat or defraud such other

person.

> **ANSWER:** This paragraph alleges legal conclusions to which no response is required. To the extent a response is required, on the advice of counsel, Defendant respectfully declines to answer the allegation(s) of this paragraph based on his privilege under the Fifth Amendment to the United States Constitution.

39. On various occasions from May 21, 2007 to August 13, 2007, Sentinel willfully violated Section 4b(a)(2)(I) of the Act, 7 U.S.C. § 6b(a)(2(I), by removing Seg 1 assets from segregation and misappropriating them for use as collateral for its loan with BONY.

> **ANSWER:** This paragraph alleges legal conclusions to which no response is required. To the extent a response is required, on the advice of counsel, Defendant respectfully declines to answer the allegation(s) of this paragraph based on his privilege under the Fifth Amendment to the United States Constitution.

40. Sentinel engaged in the conduct described in paragraphs 1 through 36 above, in or in connection with orders to make, or the making of, contracts of sale of commodities for future delivery, made, or to be made, for or on behalf of other persons where such contracts for future delivery were or may have been used for (a) hedging any transaction in interstate commerce in such commodity, or the products or byproducts thereof, or (b) determining the price basis of any transaction in interstate commerce in such commodity, or (c) delivering any such commodity sold, shipped, or received in interstate commerce for the fulfillment thereof.

> **ANSWER:** On the advice of counsel, Defendant respectfully declines to answer the allegation(s) of this paragraph based on his privilege under the Fifth Amendment to the United States Constitution.

41.    During the relevant time, Mosley willfully aided and abetted Sentinel's violations of Section 4b(a)(I) of the Act and, therefore, pursuant to Section 13(a) of the Act, 7 U.S.C. § 13c(a) (2002), Mosley is liable for the violations described in this Count One as a principal.

**ANSWER:**    This paragraph alleges legal conclusions to which no response is required. To the extent a response is required, on the advice of counsel, Defendant respectfully declines to answer the allegation(s) of this paragraph based on his privilege under the Fifth Amendment to the United States Constitution.

42.    During the relevant time, Bloom directly and indirectly controlled Sentinel and its employees, and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting the violations described in this Count One. Pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2002), Bloom is liable for the violations described in this Count One.

**ANSWER:**    This paragraph alleges legal conclusions to which no response is required. To the extent a response is required, on  the advice of counsel, Defendant respectfully declines to answer the allegation(s) of this paragraph based on his privilege under the Fifth Amendment to the United States Constitution.

43.    Each misappropriation of Seg 1 customer funds during the relevant time period, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Section 4b(a)(I) of the Act, 7 U.S.C. § 6b(a)(I) (2002).

**ANSWER:**    This paragraph alleges legal conclusions to which no response is required. To the extent a response is required, on  the advice of counsel, Defendant respectfully declines to answer the allegation(s) of this paragraph based on his privilege under the Fifth Amendment to the United States Constitution.

**COUNT TWO**
**VIOLATIONS OF SECTION 4d(a)(2) OF THE ACT AND**
**COMMISSION REGULATIONS 1.20, 1.22 AND 1.23: FAILURE**
**TO SEGREGATE AND OTHER MISUSE OF CUSTOMER FUNDS**

44.     Paragraphs 1 through 36 are realleged and incorporated herein by reference.

**ANSWER:**     Defendant re-alleges his answers to each of paragraphs 1 through 36, as set

forth above.

45.     Section 4d(a)(2) of the Act, 7 U.S.C. § 6(a)d(2) (2002), requires a FCM to treat and

deal with all customer money, securities and property as belonging to such customers and to

separately account for such money, securities and property. Section 4d(a)(2) of the Act further

prohibits a FCM from commingling customer money, securities and property with its own funds and

from using customer money, securities and property to margin or guarantee the trades or contracts

or to secure or extend the credit of any customer or person other than those for whom the same are

held.

**ANSWER:**     This paragraph alleges legal conclusions to which no response is required.

To the extent a response is required, on  the advice of counsel, Defendant

respectfully declines to answer the allegation(s) of this paragraph based on

his privilege under the Fifth Amendment to the United States Constitution.

46.     Commission Regulation 1.20, 17 C.F.R. § 1.20 (2007), requires that all customers'

funds be separately accounted for, properly segregated and treated as belonging to such customers,

and not commingled with the funds of any other person.

**ANSWER:**     This paragraph alleges legal conclusions to which no response is required.

To the extent a response is required, on  the advice of counsel, Defendant

respectfully declines to answer the allegation(s) of this paragraph based on

his privilege under the Fifth Amendment to the United States Constitution.

47.    Commission Regulation 1.22, 17 C.F.R. § 1.22 (2007), prohibits a FCM from using,

or permitting the use of, funds of a customer to secure or extend the credit of any person other than

such customer.

**ANSWER:**    This paragraph alleges legal conclusions to which no response is required.

To the extent a response is required, on  the advice of counsel, Defendant

respectfully declines to answer the allegation(s) of this paragraph based on

his privilege under the Fifth Amendment to the United States Constitution.

48.    Commission Regulation 1.23, 17 C.F.R. § 1.23 (2007), prohibits a FCM from

withdrawing upon customer segregated funds beyond its actual interest therein and the use of such

funds of a customer to extend the credit of any other person.

**ANSWER:**    This paragraph alleges legal conclusions to which no response is required.

To the extent a response is required, on  the advice of counsel, Defendant

respectfully declines to answer the allegation(s) of this paragraph based on

his privilege under the Fifth Amendment to the United States Constitution.

49.    The customers of the other FCMs whose funds were invested by those FCMs with

Sentinel were in turn customers of Sentinel.

**ANSWER:**    This paragraph alleges legal conclusions to which no response is required.

To the extent a response is required, on  the advice of counsel, Defendant

respectfully declines to answer the allegation(s) of this paragraph based on

his privilege under the Fifth Amendment to the United States Constitution.

50.    Throughout the relevant time, Sentinel violated Section 4d(a)(2) of the Act, 7 U.S.C. § 6d(a)(2) (2002), and Commission Regulations 1.20, 1.22 and 1.23, 17 C.F.R. §§ 1.20, 1.22 and 1.23 (2007), by:  commingling Seg 1 customer funds with those of Sentinel and others; using those Seg 1 customer funds to secure the BONY loan of Sentinel; failing to treat, deal with, and account for Seg 1 customer funds as belonging to the customer; and withdrawing customer segregated funds beyond Sentinel's actual interest therein.

> **ANSWER:**    This paragraph alleges legal conclusions to which no response is required. To the extent a response is required, on  the advice of counsel, Defendant respectfully declines to answer the allegation(s) of this paragraph based on his privilege under the Fifth Amendment to the United States Constitution.

51.    During the relevant time, Mosley willfully aided and abetted Sentinel's violations of Section 4d(a)(2) of the Act, 7 U.S.C. § 6d(a)(2) (2002), and Commission Regulations 1.20, 1.22 and 1.23, 17 C.F.R. §§ 1.20, 1.22 and 1.23 (2007). Therefore, Mosley is liable for the violations described in this Count Two as a principal.

> **ANSWER:**    This paragraph alleges legal conclusions to which no response is required. To the extent a response is required, on  the advice of counsel, Defendant respectfully declines to answer the allegation(s) of this paragraph based on his privilege under the Fifth Amendment to the United States Constitution.

52.    During the relevant time, Bloom directly and indirectly controlled Sentinel and its employees, and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting the violations described in this Count Two. Pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b), Bloom is liable for the violations described in this Count Two.

-22-

**ANSWER:**     This paragraph alleges legal conclusions to which no response is required. To the extent a response is required, on the advice of counsel, Defendant respectfully declines to answer the allegation(s) of this paragraph based on his privilege under the Fifth Amendment to the United States Constitution.

53.     Each removal from segregation and commingling of Seg 1 customer funds with those of Sentinel during the relevant time, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Sections 4d(a)(2) of the Act, 7 U.S.C. § 6d(a)(2) (2002), and Commission Regulation 1.20, 17 C.F.R. § 1.20 (2007).

**ANSWER:**     This paragraph alleges legal conclusions to which no response is required. To the extent a response is required, on the advice of counsel, Defendant respectfully declines to answer the allegation(s) of this paragraph based on his privilege under the Fifth Amendment to the United States Constitution.

54.     Each use of Seg 1 customer funds to secure Sentinel's BONY loan during the relevant time period, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Section 4d(a)(2) of the Act, 7 U.S.C. § 6d(a)(2) (2002), and Commission Regulation 1.22, 17 C.F.R. § 1.22 (2007).

**ANSWER:**     This paragraph alleges legal conclusions to which no response is required. To the extent a response is required, on the advice of counsel, Defendant respectfully declines to answer the allegation(s) of this paragraph based on his privilege under the Fifth Amendment to the United States Constitution.

55.     Each withdrawal of Seg 1 customer funds beyond Sentinel's actual interest therein at the relevant point in time, including but not limited to those specifically alleged herein, is alleged

as a separate and distinct violation of Section 4d(a)(2) of the Act, 7 U.S.C. § 6d(a)(2) (2002), and

Commission Regulation 1.23, 17 C.F.R. § 1.23 (2007).

> **ANSWER:**    This paragraph alleges legal conclusions to which no response is required.
> To the extent a response is required, on  the advice of counsel, Defendant
> respectfully declines to answer the allegation(s) of this paragraph based on
> his privilege under the Fifth Amendment to the United States Constitution.

**COUNT THREE**
**VIOLATIONS OF SECTION 4d(b) OF THE ACT:**
**MISUSE OF CUSTOMER FUNDS**

56.    Paragraphs 1 through 36 are realleged and incorporated herein by reference.

> **ANSWER:**    Defendant re-alleges his answers to each of paragraphs 1 through 36, as set
> forth above.

57.    Section 4d(b) of the Act, 7 U.S.C. § 6d(b) (2002), makes it unlawful for any person

including any depository, that has received any money, securities, or property for deposit in a

separate account as provide for in Section 4d(a)(2) of the Act, to hold, dispose of, or use any such

money, securities, or property as belonging to the depositing futures commission merchant or any

person other than the customers of such FCM.

> **ANSWER:**    This paragraph alleges legal conclusions to which no response is required.
> To the extent a response is required, on  the advice of counsel, Defendant
> respectfully declines to answer the allegation(s) of this paragraph based on
> his privilege under the Fifth Amendment to the United States Constitution.

58.    Throughout the relevant time, Sentinel violated Section 4d(b) of the Act, 7 U.S.C.

§ 6d(b) (2002), by using Seg 1 customer funds to secure the BONY loan of Sentinel.

**ANSWER:** This paragraph alleges legal conclusions to which no response is required. To the extent a response is required, on the advice of counsel, Defendant respectfully declines to answer the allegation(s) of this paragraph based on his privilege under the Fifth Amendment to the United States Constitution.

59. During the relevant time, Mosley willfully aided and abetted Sentinel's violations of Section 4d(b) of the Act, 7 U.S.C. § 6d(b) (2002). Therefore, Mosley is liable for the violations described in this Count Three as a principal.

**ANSWER:** This paragraph alleges legal conclusions to which no response is required. To the extent a response is required, on the advice of counsel, Defendant respectfully declines to answer the allegation(s) of this paragraph based on his privilege under the Fifth Amendment to the United States Constitution.

60. During the relevant time, Bloom directly and indirectly controlled Sentinel and its employees, and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting the violations described in this Count Three. Pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b), Bloom is liable for the violations described in this Count Three.

**ANSWER:** This paragraph alleges legal conclusions to which no response is required. To the extent a response is required, on the advice of counsel, Defendant respectfully declines to answer the allegation(s) of this paragraph based on his privilege under the Fifth Amendment to the United States Constitution.

61. Each use of Seg 1 customer funds to secure Sentinel's BONY loan during the relevant time period, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Section 4d(b) of the Act, 7 U.S.C. § 6d(b) (2002).

**ANSWER:**   This paragraph alleges legal conclusions to which no response is required. To the extent a response is required, on the advice of counsel, Defendant respectfully declines to answer the allegation(s) of this paragraph based on his privilege under the Fifth Amendment to the United States Constitution.

## COUNT FOUR
### VIOLATIONS OF SECTION 4g(a) OF THE ACT AND COMMISSION REGULATION 1.10(d): FILING FALSE REPORTS WITH THE COMMISSION

62. The allegations set forth in paragraphs 1 through 36 are re-alleged and incorporated herein.

**ANSWER:**   Defendant re-alleges his answers to each of paragraphs 1 through 36, as set forth above.

63.    During the period of at least September 2005 through July 2007, Sentinel violated Section 4g(a) of the Act, 7 U.S.C. § 6g(a), and Commission Regulation 1.10(d), 17 C.F.R. § 1.10(d), by filing with the Commission at least 23 Form 1-FRs that falsely reported that Sentinel owned no securities purchased under resale agreements and had no amounts payable.

**ANSWER:**   This paragraph alleges legal conclusions to which no response is required. To the extent a response is required, on the advice of counsel, Defendant respectfully declines to answer the allegation(s) of this paragraph based on his privilege under the Fifth Amendment to the United States Constitution.

64.    During the relevant time, Bloom directly and indirectly controlled Sentinel and its employees, and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting the violations described in this Count Four. Pursuant to Section 13(b) of the Act, 7

U.S.C. § 13c(b), Bloom is liable for the violations described in this Count Four.

> **ANSWER:** This paragraph alleges legal conclusions to which no response is required. To the extent a response is required, on the advice of counsel, Defendant respectfully declines to answer the allegation(s) of this paragraph based on his privilege under the Fifth Amendment to the United States Constitution.

65.    The filing of each Form 1-FR that falsely reported that Sentinel owned no securities purchased under resale agreements and/or had no amounts payable is alleged as a separate and distinct violation of Section 4g(a) of the Act, 7 U.S.C. § 6g(a), and Commission Regulation 1.10(d), 17 C.F.R. § 1.10(d).

> **ANSWER:** This paragraph alleges legal conclusions to which no response is required. To the extent a response is required, on the advice of counsel, Defendant respectfully declines to answer the allegation(s) of this paragraph based on his privilege under the Fifth Amendment to the United States Constitution.

## COUNT FIVE
### VIOLATIONS OF SECTION 6(c) OF THE ACT: WILLFULLY MAKING FALSE REPORTS TO THE COMMISSION

66.    The allegations set forth in paragraphs 1 through 36 are re-alleged and incorporated herein.

> **ANSWER:** Defendant re-alleges his answers to each of paragraphs 1 through 36, as set forth above.

67.    Section 6(c) of the Act, 7 U.S.C. § 9, prohibits, *inter alia*, the willful making of a false or misleading statement of material fact in any registration application or any report filed with the Commission under the Act.

**ANSWER:** This paragraph alleges legal conclusions to which no response is required. To the extent a response is required, on  the advice of counsel, Defendant respectfully declines to answer the allegation(s) of this paragraph based on his privilege under the Fifth Amendment to the United States Constitution.

68.     During the period of at least September 2005 through July 2007, in at least 23 Form 1-FRs that Sentinel filed with the Commission, Sentinel violated Section 6(c) of the Act by willfully making false statements that Sentinel owned no securities purchased under resale agreements and had no amounts payable.

**ANSWER:** This paragraph alleges legal conclusions to which no response is required. To the extent a response is required, on  the advice of counsel, Defendant respectfully declines to answer the allegation(s) of this paragraph based on his privilege under the Fifth Amendment to the United States Constitution.

69.     During the relevant time, Bloom directly and indirectly controlled Sentinel and its employees, and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting the violations described in this Count Four. Pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b), Bloom is liable for the violations described in this Count Four.

**ANSWER:** This paragraph alleges legal conclusions to which no response is required. To the extent a response is required, on  the advice of counsel, Defendant respectfully declines to answer the allegation(s) of this paragraph based on his privilege under the Fifth Amendment to the United States Constitution.

70.     The filing of each Form 1-FR in which Sentinel willfully made false statements that Sentinel owned no securities purchased under resale agreements and/or had no amounts payable is

alleged as a separate and distinct violation of Section 6(c) of the Act, 7 U.S.C. § 9.

**ANSWER:**   This paragraph alleges legal conclusions to which no response is required. To the extent a response is required, on  the advice of counsel, Defendant respectfully declines to answer the allegation(s) of this paragraph based on his privilege under the Fifth Amendment to the United States Constitution.

## VI.

## RELIEF REQUESTED

WHEREFORE, Defendant Bloom respectfully requests that the Court enter judgment in his favor, deny the relief requested by Plaintiff, and grant him any other just and equitable relief it deems appropriate.  Defendant also demands a jury.

Respectfully submitted,

/s/ Terence H. Campbell
One of the Attorneys for
    Defendant Eric A. Bloom

Theodore T. Poulos
Terence H. Campbell
Cotsirilos, Tighe & Streicker, Ltd.
33 North Dearborn Street, Suite 600
Chicago, IL 60602
Tel.  312-263-0345

## CERTIFICATE OF SERVICE

Terence H. Campbell, an attorney, hereby certifies that on August 19, 2008, in accordance with Fed.R.Civ. P. 5, LR 5.5, and the General Order on Electronic Case Filing (ECF), the following documents:

    1.  Defendant Eric Bloom's Answer to the Complaint

was served pursuant to the District Court's ECF system as to ECF filers.


                        /s/  Terence H. Campbell
                        Terence H. Campbell