UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

COMMODITIES FUTURES TRADING )
COMMISSION, )
 )
              Plaintiff, )
 )
vs. ) 08 C 2410
 )
SENTINEL MANAGEMENT GROUP, INC., )
ERIC A. BLOOM AND CHARLES K. )
MOSLEY, )
 )
              Defendants. )

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the court on Plaintiff Commodities Futures Trading Commission's ("CFTC") and Defendants Eric A. Bloom's ("Bloom") and Charles K. Mosley's ("Mosley") (collectively, "Defendants") cross-motions for summary judgment. For the reasons set forth below, the CFTC's motion is denied, and the Defendants' cross-motions for summary judgment are granted.

BACKGROUND

This case arises out of the same factual basis as a related case, SEC v. Sentinel, No. 07-CV-4686 (N.D. Ill). On March 30, 2012 the Court issued a Memorandum Opinion in which we provided a detailed account of the relevant facts in the related

case. Rather than restate those facts here, we will provide an overview of the most salient facts relevant to this matter.

Sentinel Management Group ("Sentinel") was an investment advisor registered with the U.S. Securities and Exchange Commission ("SEC") and as a futures commission merchant ("FCM") with the CFTC. Bloom was the President and Chief Executive Officer of Sentinel for nearly twenty years and controlled the company's day-to-day operations. Bloom also served as Sentinel's Chief Compliance Officer from January 2006 through August 2007 and was responsible for reviewing Sentinel's policies to ensure its compliance with federal, state, and internal regulations. Mosley was Sentinel's Vice President, Head Trader, and Portfolio Manager for approximately five years and was responsible for supervising Sentinel's investing and trading activities.

Sentinel managed short-term investment portfolios for various types of clients, including FCMs, hedge funds, financial institutions, pension funds, and individuals. Rather than own any particular security in a given portfolio, Sentinel's clients would each own a pro rata interest in the portfolio. Sentinel allocated the interest earned by its portfolios to its investors in proportion to each investor's pro rata share, less Sentinel's management fees.

A substantial portion of Sentinel's clients were FCMs that sought to invest their excess margin funds. The CFTC regulates FCMs and has imposed strict regulations regarding their allowable investments. For this reason, Sentinel sought advice from the CFTC regarding the proper registration status to best achieve its business objective. Because FCMs can only deposit their customers' excess margin funds with banks, clearing organizations, or other FCMs, 17 C.F.R. § 1.49(d)(2), the CFTC requested that Sentinel register as an FCM.

Shortly after Sentinel's establishment, the CFTC issued a "No Action Letter" to Sentinel in which the CFTC agreed to exempt Sentinel from the net capital requirements otherwise applicable to FCMs provided that, among other things, Sentinel abstain from trading commodities. Sentinel represented to the CFTC that it would register as an FCM "solely so that it may hold customer's funds deposited with it by other FCMs for the exclusive purpose of investing such funds." Sentinel never engaged in any futures trading.

Sentinel held the assets of its client portfolios in separate custodial accounts at the Bank of New York Mellon Corporation ("BONY"). Sentinel also maintained a House Portfolio for its proprietary trading that was available to individuals affiliated with Sentinel. In addition to maintaining these accounts, BONY provided Sentinel with financing through a loan secured by Sentinel's clearing accounts. The BONY loan was

not a committed financing arrangement but rather an overnight loan that was reentered every night. BONY required that Sentinel maintain enough securities in its clearing accounts on a daily basis to collateralize the loan.

In early 2004, the CFTC changed its rules to allow FCMs to use repurchase agreements as a form of leverage. Bloom recommended that Sentinel increase the amount of leverage in its client portfolios to take advantage of this change. Sentinel began using reverse repurchase agreements ("reverse repos"), in which Sentinel would sell a security to a broker for cash at below-market value with an express commitment to repurchase that security at a higher price. The difference between the sale price and repurchase price is known as a "haircut." Sentinel profited through its use of reverse repos to the extent that the securities' increase in value over the duration of the reverse repo agreement exceeded the haircut.

In June 2007, a broker with whom Sentinel had over one billion dollars in outstanding reverse repos began to redeem these repos. In July 2007, another broker with whom Sentinel had approximately $600 million in outstanding reverse repos followed suit. Sentinel drew on the BONY loan to pay off these brokers, and the outstanding amount of the loan ballooned to over $570 million. On August 13, 2007, Sentinel tapped out its sources of funds, including the BONY loan, and ran out of cash to meet its clients' redemptions. On August 17, 2007, BONY sent a letter to Bloom

stating that Sentinel was in default under the terms of the loan agreements and that BONY had the right to sell the securities pledged as collateral. That same day, Sentinel filed for Chapter 11 bankruptcy.

On April 28, 2008 the CFTC filed a complaint alleging that Bloom, Mosley, and Sentinel violated various sections of the Commodities Exchange Act ("CEA"). Throughout the subsequent investigation, Bloom invoked his Fifth Amendment right against self-incrimination. Although Mosley answered the CFTC's complaint, he too subsequently invoked his Fifth Amendment right. On August 3, 2009 Sentinel consented to judgment as part of a settlement agreement with the CFTC. The CFTC now moves for summary judgment against Bloom and Mosley, the only remaining defendants.

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings, discovery, disclosures, and affidavits establish that there is no genuine issue of material fact, such that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Winsley v. Cook Cnty., 563 F.3d 598, 602-03 (7th Cir. 2009). A genuine issue of material fact exists when, based on the evidence, a reasonable jury could find in favor of the non-moving party. Trinity Homes LLC v. Ohio Cas. Ins. Co., 629 F.3d 653, 656 (7th Cir. 2010). A non-movant's failure to respond to a motion for summary judgment does not

automatically result in a judgment for the movant. Raymond v. Ameritech Corp., 442 F.3d 600, 608 (7th Cir. 2006). Rather, the ultimate burden of persuasion remains with the movant to show that it is entitled to judgment as a matter of law. Id. In considering a motion for summary judgment, a court construes all facts and draws all reasonable inferences in favor of the non-moving party. Smith v. Hope Sch., 560 F.3d 694, 699 (7th Cir. 2010).

## DISCUSSION

I. Evidentiary Matters

As a preliminary matter, Defendants seek to strike several sources of evidence relied upon by the CFTC: (1) the affidavit of Lisa Marlow ("Marlow"), a supervisory auditor to the CFTC; (2) notes from an investigative audit of Sentinel; and (3) the expert testimony of Gifford Fong ("Fong"). Bloom also individually objects of the use of Mosley's answer, Mosley's deposition, and Theresa Arana's ("Arana") deposition.

A. Lisa Marlow's Affidavit

Lisa Marlow ("Marlow"), a Supervisory Auditor for the CFTC, conducted an investigation of Sentinel in August 2007, after Sentinel's collapse. Marlow summarized the findings of her investigation in an affidavit, which the CFTC relies upon to support its motion. Defendants argue that Marlow's affidavit is, in substance, an expert report. Rule 26(a)(2) requires that a party planning to use expert evidence disclose the identity

of the expert, the subject matter which the witness is expected to present, and a summary of the facts and opinions to which the witness is expected to testify. Fed. R. Civ. P. 26(a)(2)(C). Failure to properly disclose expert evidence requires the exclusion of the evidence, unless the non-disclosure was justified or harmless. Fed. R. Civ. P. 37(c)(1); Musser v. Gentiva Health Servs., 356 F.3d 751, 758 (7th Cir. 2004) (citation omitted).

Testimony based solely on an individual's special training or experience is expert testimony, whereas lay testimony is comprised of the observations of a witness that are "not based on scientific, technical, or other specialized knowledge." Fed. R. Evid. 701, Fed. R. Evid. 702. In other words, "'lay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field.'" United States v. Christian, 2012 WL 763177, at *5 (7th Cir. Mar. 12, 2012) (quoting Fed. R. Evid. 701 advisory committee's note).

Marlow's affidavit is styled as an expert report: it lists her qualifications, the records that she reviewed, her interpretation of these records, and her ultimate conclusions. Marlow's affidavit draws conclusions from complex financial documents that require special skill and experience to interpret. Therefore, Marlow's affidavit constitutes an expert report.

The CFTC's failure to disclose Marlow as an expert under Federal Rule of Civil Procedure 26(a)(2)(C) was neither harmless nor justifiable. Had the CFTC properly disclosed Marlow as an expert, the Defendants could have responded in several ways, "such as attempting to disqualify the expert testimony . . . , retaining rebuttal experts, and holding additional depositions to retrieve the information not available" because of the lack of notice. Musser, 356 F.3d at 758. As the CFTC has not provided any justification for the lack of its disclosure, the Court strikes Marlow's deposition from the record.

B.  Fong's Deposition

Defendant's next challenge the CFTC's reliance on Fong's deposition. Fong is the SEC's expert in the related case against the Defendants. The two cases were consolidated for discovery purposes. The CFTC did not disclose Fong as an expert as required by Federal Rule of Civil Procedure 26(a)(2). However, Defendant's were not prejudiced by this nondisclosure, as they were present when Fong provided his deposition testimony and had an opportunity to cross-examine him. Therefore, Fong's testimony will not be excluded.

C.  Notes From an Investigatory Audit

Defendants next challenge the use of a series of notes which set forth the conclusions of an auditor or investigator that examined Sentinel over a span of five days. A court may only consider evidence at summary judgment that would otherwise be admissible at trial. Gunville v. Walker, 583 F.3d 979, 985 (7th Cir. 2009). Defendants maintain that these notes lack proper foundation, as there is no indication as to who prepared them, how and when they were prepared, or the source of the data contained therein. By failing to provide this information, the CFTC has not laid the proper foundation for these notes, and they are therefore excluded from consideration.

D.  Mosley's and Arana's Deposition Testimony

Bloom seeks to exclude the deposition testimony of Mosley and Arana. At their depositions, Mosley and Arana both asserted their Fifth Amendment right against self-incrimination in response to every meaningful question. However, their deposition testimony nevertheless constitutes evidence and will therefore not be excluded from consideration. Moreover, Mosley's deposition has evidentiary value because the Court may rely on evidence of Mosley's invocation of his Fifth Amendment right to draw an adverse inference of scienter. See SEC v. Lyttle, 538 F.3d 601, 604 (7th Cir. 2008). Therefore, Mosley's and Arana's depositions will not be excluded, though they will not be used to support an adverse inference of scienter against Bloom.

E.  Mosley's Answer

Finally, Bloom seeks to strike Mosley's answer to the CFTC's complaint. A court may exclude a witness' testimony from consideration on a motion for summary judgment if the witness invokes his Fifth Amendment right against self-incrimination on cross-examination. United States v. Parcels of Land, 903 F.2d 36, 43 (1st Cir. 1990) (collecting cases). Although Mosley initially answered the complaint, he subsequently invoked his Fifth Amendment right against self-incrimination to all substantive questions when deposed by Bloom's attorneys. Therefore, the SEC may not rely on Mosley's answer in its motion for summary judgment against Bloom, as Bloom has not been afforded an opportunity to meaningfully cross-examine Mosley. However, Mosley's answer is admissible in the SEC's motion for summary judgment against Mosley himself.

Having resolved these preliminary matters, we turn to the substance of the parties' cross motions for summary judgment.

II.  The CFTC's Theory of Liability

The CFTC's complaint alleges that Sentinel violated several provisions of the CEA. The CFTC seeks to hold Bloom liable for Sentinel's misconduct under the "control person" theory of liability under Section 13(b) of the CEA, 7 U.S.C. § 13c(b). To establish Bloom's liability under Section 13(b), the CFTC must show that Bloom